IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01944-WJM-KLM

EDWARD ALLEN, also known as Edward A. Clutts,

    Plaintiff,

v.

DEAN WILLIAMS, Executive Director of CDOC,
CHP,
JENNIFER MIX, Dr., and
JOHN DOE,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Strike the Claim Against CHP**

**Defendants in Plaintiff's Second Amended Complaint** [#65][1] (the "Motion to Strike"),

filed by Defendants Correctional Health Partners ("CHP") and Jennifer Mix ("Mix"),[2] and

on the **Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P.**

**12(b)(1) and Fed R. Civ. P. 12(b)(6)** [#67] (the "Motion to Dismiss"), filed by Defendant

Dean Williams ("Williams"), Executive Director of the Colorado Department of Corrections

("CDOC").   Plaintiff, who proceeds as a pro se litigant,[3] filed a Response [#69] to the

---

[1]  "[#65]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  The undersigned has never met and has no known relationship to Jennifer Mix.

[3]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or

Motion to Strike [#65] and a Response [#73] to the Motion to Dismiss [#67], and Defendants filed Replies [#72, #75].  Plaintiff also filed a Surreply [#76] in connection with Defendant Williams' Motion [#67], with permission of the Court.  *Minute Order* [#79].  The Motions [#65, #67] have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1.   *See* [#66, #68].   The Court has reviewed the Motions, the Responses, the Replies, the Surreply, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion to Strike [#65] be **DENIED in part**, to the extent asserted under Fed. R. Civ. P. 12(f), and **GRANTED in part**, to the extent asserted under Fed. R. Civ. P. 12(b)(6), and that the Motion to Dismiss [#67] be **GRANTED**.

## I. Background[4]

Plaintiff is an inmate of the CDOC and seems to have been housed at the Colorado Territorial Correctional Facility ("CTCF") at all times relevant to this lawsuit.  *Second Am. Compl.* [#61] at 1.  On March 27, 2015, Plaintiff injured "his right Acromioclavular Joint" ("A. C. Joint") which causes him chronic pain, including pain when writing and sleeping on his right side.  *Id.* at 4, 6.  On December 17, 2015, magnetic resonance imaging ("MRI") by a nonparty showed that Plaintiff had a "Class I separation" of his A. C. Joint and that he "needed physical therapy to prevent the need for surgery."  *Id.* at 4.

---

construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In addition, a pro se litigant must follow the same procedural rules that govern other litigants.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4]  All well-pled facts from the Second Amended Complaint [#61] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant.  *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

CDOC's Medical Department is run by Defendant CHP.  *Id.* at 3.  Defendant Mix approved physical therapy for Plaintiff's A. C. Joint in January 2016, and Plaintiff was taken to Denver Health Hospital ("Denver Health") seventeen months later in June 2017. *Id.* at 4.  At that time, Denver Health confirmed the prior MRI findings.  *Id.*  Plaintiff finally received his first physical therapy treatment on September 14, 2017, about two-and-a-half years after the initial injury.  *Id.*  Plaintiff completed the second phase of physical therapy on December 28, 2017.  *Id.*

Nearly a year later, Dr. Richard Hodge ("Hodge"), another non-party, determined that Plaintiff should return to physical therapy to complete a third phase.  *Id.* at 5.  Plaintiff asserts that an unidentified CHP representative denied Dr. Hodge's initial request.  *Id.* On February 1, 2019, Dr. Hodge resubmitted the request to have Plaintiff sent to the third phase of his physical therapy, and Plaintiff asserts that Defendant Mix denied this request. *Id.*  Because of this denial, Plaintiff filed grievances to continue physical therapy and infers that one such grievance, number C-CS 18/19-00140088, was denied, based on the grievance officer's response that "I cannot second guess the medical, professional opinion, of those professionals regarding your diagnosis and treatment, as I am not a medical professional."  *Id.*  On May 15, 2020, Plaintiff filed the present lawsuit.  *Id.*  On June 9, 2020, Plaintiff completed the third stage of physical therapy when CDOC brought a physical therapist to CTCF.  *Id.*

In addition, Plaintiff was diagnosed with post-traumatic stress disorder around September 2017 and states that the associated night terrors cause him to fall out of his bunk bed.  *Id.* at 7.  Due to falling from the top bunk "several times," including a fall in 2016 resulting in a "4-inch cut," CDOC placed Plaintiff on bottom bunk restriction.  *Id.*

Defendant John Doe, an unidentified CDOC provider, rescinded the bottom bunk restriction on December 10, 2020.  *Id.*  On December 18, 2020, Plaintiff fell from his top bunk again, resulting in a "Class II separation with rotator cu[ff] damage." *Id.* at 5.  The same day, Plaintiff filed a grievance, and the grievance officer reinstated the bottom bunk restriction.  *Id*. at 7.  After wearing a sling for nearly a year, Plaintiff had surgery to remove part of his collar bone on December 7, 2021.  *Id.* at 6.  Since that time, it seems Plaintiff has been healing from surgery. *Id.* at 6.  Plaintiff states that he has been suffering pain in his A. C. Joint that has significantly affected his daily activities from March 27, 2015, to the day of his surgery on December 7, 2021.  *Id.*  Plaintiff also states that it is "only a matter of time" before his bottom bunk restriction is removed, and he is subjected to more falls, because "providers have taken the bottom bunk restriction away, and when [Plaintiff] falls off the top bunk again, [he] gets moved back to a bottom bunk."  *Id.* at 7-8.

As a result of these allegations, Plaintiff asks for the following in connection with two Eighth Amendment deliberate indifference claims: (1) money damages from Defendant Mix in her individual capacity for pain and suffering caused by denying treatment from February 1, 2019, until September 9, 2020; (2) money damages from Defendant CHP for pain and suffering caused by denying treatment from March 27, 2015, until December 7, 2021; (3) an injunction that Defendant Williams "place the plaintiff on permanent bottom bunk restriction"; (4) money damages from Defendant John Doe in his individual capacity "for deliberately removing the plaintiff's bottom bunk restriction . . . and [for] the cut to plaintiff['s] head";  (5) punitive damages from Defendants CHP, John Doe, and Mix for "deliberately causing injury to the plaintiff"; and (6) reasonable costs, attorneys' fees, and expert witness fees.  *Id.* at 9-10.

In the present Motions [#65, #67] Defendants seek to strike or dismiss all aspects of Plaintiff's claims.

## II.  Standard of Review

### A.    Federal Rule of Civil Procedure 12(f)

The purpose of a motion to strike pursuant to Rule 12(f) is to "conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case." *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993)); *see also RTC v. Schonacher*, 844 F. Supp. 689, 691 (D. Kan. 1994) (stating that Rule 12(f)'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial").  Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

However, motions to strike are disfavored and will only be granted under the rarest of circumstance.  *Sierra Club*, 173 F.R.D. at 285.  As such, the moving party's "burden of proof is a heavy one."  *Holzberlein v. OM Fin. Life Ins. Co*., No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).  Further, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike."  *Sierra Club*, 173 F.R.D. at 285.  Moreover, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f), discretion remains with the Court to grant or deny the motion.  *See* Fed. R. Civ. 12(f) (noting that allegations which are subject to Rule 12(f) "may" be stricken).

### B.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed.  *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  With a factual attack, the moving party challenges the facts upon which subject matter jurisdiction depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987), *cert. denied*, 484 U.S. 986 (1987)).  The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.  *Id.*

**C.     Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."

*Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

#### A.    Motion to Strike

Although titled as a motion to strike, Defendants CHP and Mix's motion is really a motion to strike or, in the alternative, a motion to dismiss. *Motion to Strike* [#65] at 3.  In this section of the Analysis, the Court only addresses the portion that is a motion to strike under Fed. R. Civ. P. 12(f).

Rule 12(f) provides in relevant part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The precise basis of the Motion to Strike [#65] is unclear, because it is unclear whether Defendants CHP and Mix are arguing whether the "matter" in Plaintiff's Second Amended Complaint [#61] is "redundant, immaterial, impertinent, or scandalous."  *See* Fed. R. Civ. P. 12(f).

Plaintiff is currently on his third operative complaint, and the Court previously examined his claims as they were alleged in his Amended Complaint [#14].  *See Recommendation* [#35]; *Order* [#52].  To the extent Plaintiff may have attempted to reassert claims in his Second Amended Complaint [#61] that were dismissed *with prejudice* from his Amended Complaint [#14], an argument could be made that such material is redundant, immaterial, or perhaps even impertinent.  *See Charles v. Hackford*,

No. 18-4204, 2018 WL 4006938, at *1 (10th Cir. Apr. 5, 2018) (stating that a "dismissal with prejudice means the plaintiff cannot return to federal court with the same claims"). The Court previously recommended that all but one claim against Defendants be dismissed without prejudice, and the District Judge subsequently adopted the recommendation. *Recommendation* [#35] at 14, 24; *Order* [#52] at 12-13. The one claim that was dismissed with prejudice sought injunctive relief against Defendant Mix in her individual capacity regarding a bottom bunk restriction.   *Recommendation* [#35] at 14. The Court found that Plaintiff could not obtain injunctive relief from Defendant Mix because a government official acting in her individual capacity is immune from suit for injunctive relief under 42 U.S.C. § 1983.  *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 22, 30 (1991); *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").  Appropriately, though, Plaintiff does not seek injunctive relief against Defendant Mix in her individual capacity in the currently operative Second Amended Complaint [#61].

The other claims asserted against Defendants CHP and Mix in the prior Amended Complaint [#14] were dismissed without prejudice, with leave to file a Second Amended Complaint.  *Order* [#52].  Defendants CHP and Mix concede that Plaintiff has provided some new allegations in the Second Amended Complaint [#61], although they assert that such allegations have no impact on the Court's previous analysis of Plaintiff's claims against them.  *Motion to Strike* [#65] at 2-3.  Nevertheless, in order to make such a determination, the Court must examine the new allegations under the appropriate Rule

12(b) standards.  Summarily striking the amended claims against Defendants CHP and Mix under Rule 12(f) is therefore inappropriate.

Accordingly, the Court **recommends** that the Motion to Strike [#65] be **denied in part** to the extent asserted under Rule 12(f).  *See Big Cats of Serenity Springs, Inc. v. Vilsack*, No. 13-cv-03275-REB-KLM, 2015 WL 1432069, at *13 (D. Colo. March 25, 2015) (stating that "discretion remains with the Court to grant or deny" a motion to strike).

## B.    Motions to Dismiss

Plaintiff's Claim One and Claim Two are both asserted under the Eighth Amendment.  *Second Am. Compl.* [#61] at 4, 6.  The Eighth Amendment provides protection against cruel and unusual punishment and imposes a duty on prison officials to provide reasonable protection from serious bodily harm.  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  The Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

To successfully state a claim for Eighth Amendment violations, the plaintiff must satisfy both prongs of the deliberate indifference test: (1) objectively, the harm the plaintiff alleges must be sufficiently serious to receive constitutional protection; and (2) subjectively, the defendant must have a sufficiently culpable state of mind and be subjectively aware of a substantial risk to the plaintiff's health or safety and purposefully disregard that risk.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).   "The

deliberate indifference test lies somewhere between the poles of negligence at one end and purpose or knowledge at the other," and has been "routinely equated with recklessness." *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). The medical condition complained of must be sufficiently serious, such that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective component of an Eighth Amendment claim is satisfied when a prison official acts with "deliberate indifference" to a substantial risk of serious harm to an inmate and an inmate's serious medical needs. *Farmer*, 511 U.S. at 828; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation omitted). In the medical context, deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied him access to medical care. *Estelle*, 429 U.S. at 104-05; *Sealock*, 218 F.3d at 1211; *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001). The subjective component can further be met if a defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citations omitted).

### 1.      Claim One: Physical Therapy

In Claim One, Plaintiff sues Defendants Williams, CHP, and Mix for deliberate indifference to "Plaintiff's serious medical need for physical therapy in violation of the Eighth Amendment."  *Second Am. Compl.* [#61] at 4.  Although not explicitly stated by Plaintiff in the Second Amended Complaint [#61], it seems Plaintiff argues that any alleged delay in physical therapy contributed to the need for his December 7, 2021 surgery after his December 18, 2020 fall from his bunk.  *See id.* at 10; *see also Response* [#69] at 1.[5]  Plaintiff's second fall from his bunk bed and subsequent surgery appear to be the only newly alleged relevant facts in the operative complaint.  *See generally Am. Compl.* [#14]; *Second Am. Compl.* [#61] at 5-6.

### a.      Defendant Williams

In the portion of the Second Amended Complaint [#61] titled "Request for Relief," Plaintiff does not make a specific request for relief from Defendant Williams for Claim One regarding physical therapy.  *Id.* at 4, 9-10.  Elsewhere, however, Plaintiff states that he is suing Defendant Williams in his official capacity for injunctive relief, only.  *Id.* at 2.  Thus, liberally construing the Second Amended Complaint [#61], the Court proceeds under the assumption that Plaintiff seeks injunctive relief, and only injunctive relief, from Defendant Williams on this claim.

Defendant Williams argues pursuant to Fed. R. Civ. P. 12(b)(1) that the Court lacks subject matter jurisdiction over Plaintiff's Claim One because the claim is barred by

---

[5]  In his Response [#69] to the Motion to Strike [#65], Plaintiff alleges that his surgery "would not [have] been needed if timely proper physical therapy was provided." *Response* [#69] at 1.  Even if the Court could consider this additional allegation from Plaintiff's Response [#69], *see Mobley*, 40 F.3d at 340, this conclusory statement fails to show that any alleged delay in physical therapy led to the need for surgery.

Eleventh Amendment sovereign immunity. *Motion* [#67] at 5. "It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citation omitted). The Eleventh Amendment's protections extend "to state agencies functioning as an arm of the state." *Id*. (citation omitted). Further, "[s]uits against state officials in their official capacity should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983). Eleventh Amendment immunity may be waived, by an Act of Congress, or by a state, "through a clear expression of its intent to waive." *Id.* at 780-81. 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity, and Defendant Williams has not waived his immunity. *See id.* at 781 (citations omitted); *Motion* [#67] at 6-7.

Pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of Colorado against the State of Colorado, its agencies, or its officials in their official capacities for money damages or injunctive relief for prior acts. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir.1995); *see also Hunt*, 271 F. App'x at 781. However, the doctrine of sovereign immunity does not bar "a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law." *Johns*, 57 F.3d at 1552 (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1980)). Therefore, Plaintiff may sue Defendant Williams in his official capacity only for prospective injunctive

relief, not for money damages or injunctive relief for prior acts.  *Johns*, 57 F.3d at 1552; *see Hunt*, 271 F. App'x at 781.

Although Plaintiff sues Defendant Williams for injunctive relief, there is no indication in the Second Amended Complaint [#61] that he is suing Defendant Williams for *prospective* injunctive relief in connection with this claim.  *Second Am. Compl.* [#61] at 2.  In fact, Plaintiff fails to demand specific relief at all for Claim One from Defendant Williams.  The only relief that Plaintiff demands from Defendant Williams is a permanent bottom bunk restriction as it pertains to Claim Two, as discussed below.  *Second Am. Compl.* [#61] at 9-10.  Plaintiff explains that he received physical therapy between September 14, 2017, until at least June 9, 2020.  *Second Am. Compl.* [#61] at 3-5.  Plaintiff states that on June 9, 2020 he "restarted physical therapy," therefore reasonably indicating that physical therapy continued beyond June 9, 2020.  *Id.* at 5.  Plaintiff makes no assertion that he needs physical therapy in the future, nor that there is any prospective remedy that Defendant Williams can provide in his official capacity for Claim One.  *Id.*  Thus, without a request for prospective injunctive relief, the Court finds that Defendant Williams is entitled to sovereign immunity, and the Court therefore lacks jurisdiction to adjudicate this claim.

Accordingly, the Court **recommends** that Defendant Williams's Motion to Dismiss [#67] be **granted** to the extent that Claim One asserted against him be **dismissed without prejudice** for lack of subject matter jurisdiction.  *See Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.").

**b.     Defendants CHP and Mix**

Plaintiff sues Defendant CHP, an entity,[6] for damages for deliberate indifference in "denial and delay of [physical therapy] treatment" between March 27, 2015, and December 7, 2021, and the "contribution" the delay had on Plaintiff's A. C. Joint. *Second Am. Compl.* [#61] at 3, 10.  For the same claim, Plaintiff also sues Defendant Mix in her individual capacity for damages, but only for the time between February 1, 2019, to September 9, 2020. *Id. at* 10.

Claim One is a reassertion of the Eighth Amendment claim from Plaintiff's prior Amended Complaint [#14] against Defendant Mix for money damages regarding physical therapy.[7]  *Second Am. Compl.* [#61] at 4; *see Am. Compl.* [#14] at 5.  Previously, the Court recommended that the District Judge dismiss the damages claim without prejudice because it was unable to find that Defendant Mix subjectively knew of and disregarded an excessive risk to Plaintiff's health.  *Recommendation* [#35] at 23-24.  The District Judge adopted that Recommendation [#35] and dismissed the claim without prejudice. *Order* [#52] at 11.

Defendants CHP and Mix now argue that Plaintiff is realleging the same Eighth Amendment claim based on the same physical therapy issues.  *Order* [#52] at 13; *Motion* [#65] at 2.  The Court notes that, while this is the second time Plaintiff has asserted the same Eighth Amendment claim against these two Defendants, this is the first time that

---

[6]  Plaintiff states that he is suing CHP in its individual capacity, but because it is an entity, CHP does not have an official or an individual capacity designation.  *Second Am. Compl.* [#61] at 3.

[7]  Plaintiff had previously also requested injunctive relief in connection with his physical therapy, which the Court recommended be deemed prudentially moot, and which the District Judge adopted.  *Recommendation* [#35] at 6-13; *Order* [#52] at 7-8.  Plaintiff does not renew that request in the Second Amended Complaint [#61].

Plaintiff requests monetary damages from Defendant CHP, although Plaintiff continues to request monetary damages from Defendant Mix in her individual capacity.  *See Am Compl.* [#14] at 5; *Second Am. Compl.* [#61] at 3,10.

### i.    Defendant Mix

Plaintiff requests damages from Defendant Mix "for denial and delay of treatment from February 1, 2019, to September 9, 2020."  *Id.* at 10.  Plaintiff's prior Amended Complaint [#14] requested damages from February 1, 2019, only to June 9, 2020.  *Am. Compl.* [#14] at 4, 6.  Therefore, Plaintiff's Second Amended Complaint [#61] reasserts his prior claim and request for relief, plus an additional three months' (June 9, 2020, through September 9, 2020) worth of damages, even though Plaintiff maintains that he "restarted physical therapy" on June 9, 2020.  *Second Am. Compl.* [#61] at 5, 10.  The dates pertaining to Defendant Mix's alleged deliberate indifference in the Second Amended Complaint [#61] do not coincide with the date that Plaintiff states he restarted physical therapy.  *Second Am. Comp.* [#61] at 5.  Particularly because Plaintiff does not allege that that he has requested additional physical therapy since June 9, 2020, or that he has been denied any therapy, it is unclear why Plaintiff requests damages for the three months after June 9, 2020.  *Id.*

As stated above, the only relevant facts Plaintiff added to the Second Amended Complaint [#61] are that (1) Plaintiff fell from his top bunk on December 18, 2020, and (2) Plaintiff received surgery on his A.C. Joint on December 7, 2021. *Second Am. Compl.* [#61] at 5-6.  Although not explicitly stated by Plaintiff, it seems Plaintiff argues that any alleged delay in physical therapy contributed to the need for his December 7, 2021 surgery after his December 18, 2020 fall.  *See id.* at 10.  Regardless, however, there is

nothing in the Second Amended Complaint [#61] to alter the undersigned's prior Recommendation [#35] or the District Judge's Order [#52] adopting that Recommendation [#35], regarding the alleged delay and denial of physical therapy.  The District Judge previously dismissed this claim without prejudice from the Amended Complaint [#14] based on the Court's conclusion that "Plaintiff has failed to adequately allege that Defendant Mix subjectively knew of and disregarded an excessive risk to Plaintiff's health."  *Order* [#52] at 11.  The District Judge dismissed this claim without prejudice, to allow Plaintiff the opportunity to file an amended complaint to address the dearth of allegations on the subjective prong of Plaintiff's claim against Defendant Mix. Plaintiff has not provided additional allegations on this point, and, indeed, the only allegations about Defendant Mix in the Second Amended Complaint [#61] are as follows: (1) on January 7, 2016, Defendant Mix approved Plaintiff for physical therapy; (2) on February 18, 2019, Defendant Mix denied Dr. Hodge's February 1, 2019 request that Plaintiff should return to physical therapy. *Second Am. Compl.* [#61] at 4-5.  This is not a situation where Plaintiff has alleged, even vaguely, what information was before Defendant Mix.  *See, e.g.*, *Onodera v. Dowis*, No. 10-cv-02303-PAB-KLM, 2011 WL 3666748, at *8 (D. Colo. June 6, 2011) (discussing the plaintiff's statement that certain specific supporting documents would be available in discovery).  The only pertinent allegation is that a request was made and that Defendant Mix denied it.  The Court cannot find based on this slim information that Defendant Mix subjectively knew of and disregarded an excessive risk to Plaintiff's health.  Therefore, the Court's prior analysis on this issue, as adopted by the District Judge, remains the same.  *Recommendation* [#35] at 17-24; *Order* [#52] at 10-11.

Accordingly, given that Plaintiff has now had multiple opportunities to state a claim against Defendant Mix under the Eighth Amendment in connection with his alleged physical therapy needs, the Court **recommends** that the Motion to Strike [#65] be **granted in part** to the extent that Plaintiff's Claim One against Defendant Mix be **dismissed with prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990) (discussing standard of dismissing pro se litigant claims with or without prejudice).

### ii.    CHP

In the prior Amended Complaint [#14], Plaintiff had only sued Defendant CHP for injunctive relief under the Eighth Amendment, which was dismissed as prudentially moot under Rule 12(b)(1).  *Order* [#52] at 7-8.  The Court therefore did not reach Defendant CHP's Rule 12(b)(6) arguments on this claim in its prior Recommendation [#35].  In the currently operative Second Amended Complaint [#61], Plaintiff sues Defendant CHP for damages under the Eighth Amendment.  *See* [#61] at 9-10.  Defendant CHP's Motion to Strike [#65] incorporates the arguments from Defendant CHP's prior Motion to Dismiss [#24], which included Rule 12(b)(6) argument on this claim, specifically that Plaintiff fails to adequately allege the subjective prong of the deliberate indifference test with respect to Defendant CHP.  Thus, the Court now addresses this issue.

In order to adequately state a claim against Defendant CHP, Plaintiff must provide allegations in the Second Amended Complaint [#61] that Defendant CHP subjectively knew of and disregarded an excessive risk to Plaintiff's health.  *Farmer*, 511 U.S. at 837.  Here, the only allegations about Defendant CHP in the Second Amended Complaint [#61] are as follows: (1) on September 14, 2017, CHP "accepted the responsibility" for Plaintiff's

physical therapy and sent him to Denver Health for physical therapy; (2) on December 28, 2017, CHP sent Plaintiff back to Denver Health for a second stage of physical therapy; and (3) after Dr. Hodge filed a petition for Plaintiff to complete the next stage for physical therapy at Denver Health on December 14, 2018, "a CHP representative denied" the petition. *Second Am. Compl.* [#61] at 4-5 (minor spelling errors corrected).  Plaintiff then states that, after he filed a writ of mandamus in state court for an order requiring CHP or the CDOC to return Plaintiff to physical therapy, "on June 9, 2020, CDOC stepped in and brought a physical therapist into the facility", but he does not specify whether Defendant CHP took part in this approval.  *Id.* at 5 (minor spelling errors corrected).

From these allegations, it is clear that Defendant CHP acts, in part at least, in an administrative position, and that it is a so-called "gatekeeper" between Plaintiff and other medical personnel capable of treating his condition.  As such, Plaintiff must "allege that the need for medical care was obvious to the" gatekeeper.  *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. 2016).  However, there are no allegations about what information was before Defendant CHP for its consideration in administratively determining the request to put Plaintiff back in physical therapy.  This is not a situation where a gatekeeper allegedly knew that there was a medical emergency requiring immediate attention but which was nevertheless prevented by the gatekeeper.  *See, e.g.,* *Estate of Lillis by & through Lillis v. Correct Care Sols.*, LLC, No. 16-cv-03038-KLM, 2018 WL 1569752, at *5-7 (D. Colo. Mar. 30, 2018) (regarding an inmate allegedly showing signs of sepsis and pneumonia).  This is also not a situation where Plaintiff has alleged, even vaguely, what information was before Defendant CHP, even presuming that Defendants CHP had access to the same information as Defendant Mix, who worked for

CHP, but about whom, as discussed above, Plaintiff provides practically no allegations as to what information was before her.  The only pertinent allegations are that a request was made and that Defendant CHP denied it.  The Court cannot find based on this slim information that Defendant CHP subjectively knew of and disregarded an excessive risk to Plaintiff's health at the time.[8]

Accordingly, given that Plaintiff has now had multiple opportunities to state a claim against Defendant CHP under the Eighth Amendment in connection with his alleged physical therapy needs, the Court **recommends** that the Motion to Strike [#65] be **granted in part** to the extent that Plaintiff's Claim One against Defendant CHP be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 126-27.

### 2.  Claim Two: Bottom Bunk Bed Restriction

Plaintiff asserts Claim Two against Defendants Williams and John Doe.  *Second Am. Compl.* [#61] at 6.

#### a.  Defendant Williams

In Claim Two, Plaintiff seeks prospective injunctive relief in the form of a "permanent Bottom Bunk restriction" from Defendant Williams in his official capacity. *Second Am. Compl.* [#61] at 9.  Defendant Williams argues that this claim is (1) barred by sovereign immunity, (2) prudentially moot, and (3) barred by the Prison Litigation

---

[8]  Even assuming that Defendant CHP had access to all of Plaintiff's medical records at the time this request was denied, there simply is not enough information in the Second Amended Complaint [#61] to adequately allege that Defendant CHP was deliberately indifferent to Plaintiff's serious medical needs, as opposed to simply denying him a particular course of treatment he desired or, at most, engaging in medical malpractice under state tort law.  *See Order* [#52] at 11 (citing *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) ("Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996))).

Reform Act. *Motion to Dismiss* [#67] at 5, 10, 13. The Court here need only address the second argument, finding that Plaintiff's Claim Two is prudentially moot as to Defendant Williams for the reasons explained below.

A contention of mootness implicates the Court's subject-matter jurisdiction and thus must be resolved prior to addressing the merits of Plaintiff's claims. *Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject-matter jurisdiction "must be resolved before the court may address other issues presented in the motion"). Mootness arguments generally hinge on whether the plaintiff suffers an ongoing federal violation. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015) (stating courts must "decline to exercise jurisdiction where the award of any requested relief would be moot – i.e. where the controversy is no longer live and ongoing.") (citing *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994))). Defendant Williams argues that because Plaintiff currently has a bottom bunk restriction, he already has the relief he seeks and does not need an injunction. *Motion* [#67] at 11.

"Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Front Range Equine Rescue*, 782 F.3d at 568 (internal quotation marks omitted). "A case is moot . . . where the relief sought can no longer be given or is no longer needed." *Id.* (internal quotation marks omitted). Based on the information before the Court, Plaintiff's current bottom bunk restriction appears to provide relief, but he nevertheless seeks an order from the Court requiring Defendant Williams to make the

bottom bunk restriction permanent.  *Second Amend. Compl.* [#61] at 9.  Because Plaintiff

seeks an order from the Court requiring Defendant Williams to do something in the future

(or, rather, preventing Defendant Williams from changing Plaintiff's current bottom bunk

status), his request for injunctive relief is likely not constitutionally moot. *See Front Range*

*Equine Rescue*, 782 F.3d at 568.  However, "even if a case is not constitutionally moot, it

may be prudentially moot."  *Robertson v. Biby*, 719 F. App'x 802, 804 (10th Cir. 2017).

The doctrine of prudential mootness has "particular applicability" in cases where

the relief sought is an injunction against the government.   *S. Utah Wilderness All. V.*

*Smith*, 110 F.3d 724 (10th Cir. 1997).  Here, the Tenth Circuit's analysis of prudential

mootness in *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-11 (10th

Cir. 2012), is particularly relevant in regard to "duplicat[ing] Defendants' efforts."  Although

Plaintiff currently has the relief he seeks, the Court still accounts "for the possibility of

[Defendant Williams's] failure" to continue to provide that relief.  *Winzler*, 681 F.3d at

1211.  However, Plaintiff must show "that there exists some cognizable danger of

recurrent violation."  *Id.* (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Further, this cognizable danger must go beyond "a speculative risk of failure."  *Id.* at 1215.

Plaintiff does not have to "prove imminent or even a likely danger of failure," but he must

show that the danger is recurrent and do more than speculate that the CDOC will place

him in danger by removing the bottom bunk restriction.  *Id.*  Without a clear cognizable

danger, it is "needless" for the judiciary to step in and grant relief which Defendant already

provides.  *See id.* at 1212.

In his Second Amended Complaint [#61], Plaintiff states that night terrors have

caused him to fall out of his bunk.  *Second Amend. Compl.* [#61] at 7.  Plaintiff alleges

that Defendant Williams was "deliberately indifferent to the Plaintiff's serios [sic] medical need for bottom bunk restriction in violation of the eighth amendment, contributing to an injury and causing a second injury." *Id.* at 6. Although not explicitly stated, it seems Plaintiff refers to a 2016 fall as the first injury and the December 18, 2020 fall as the second injury. *Id.* at 6-7. Thus, Plaintiff alleges that there were two instances in which he was *previously* harmed without a bottom bunk restriction. *Id.* at 7. Plaintiff fails however, to allege that any harm is currently ongoing or likely to occur in the future. *Id.* at 6-7.

Although Plaintiff states that "CDOC providers will keep removing the bottom bunk," Plaintiff must do more than "speculate about or imagine" how the CDOC might fail. *Id.* at 8; *Winzler*, 681 F.3d at 1212. Plaintiff does allege that the bottom bunk restriction was removed on December 10, 2022, and subsequently reinstated on December 18, 2020, after he fell. *Second Am. Compl.* [#61] at 7. However, Plaintiff does not allege that he has suffered any injury since December 18, 2020, that he has been moved to a top bunk since December 18, 2020, or that he has even fallen out of his bunk (top or bottom) since then.[9]  *See generally id.* Plaintiff also does not indicate that Defendants have denied requests to keep his bottom bunk restriction since December 18, 2020. *See id.*

---

[9] Because mootness argument concerns subject matter jurisdiction, the Court has discretion to consider evidence outside of the pleadings to resolve any factual dispute over whether Plaintiff suffers an ongoing violation. *See Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Plaintiff's Exhibit F is a wholly typewritten "Message from Medical" dated July 22, 2021, stating: "Having reviewed Dr. Thiele's note stating night terrors with falling from bed and injuries, I have reinstated bottom bunk. Kite if you have any questions or concerns.  Neil Bourjaily, PA-C." *Response* [#73] at 4. Defendant Williams argues that Exhibit F is unauthenticated hearsay. *Reply* [#75] at 6. However, to the extent the Court considers Plaintiff's Exhibit F, the Court notes that this document merely demonstrates that CDOC providers renewed Plaintiff's bottom bunk restriction on July 22, 2021, specifically citing Plaintiff's night terrors and past injuries; the document does not unequivocally show that Plaintiff's restriction had previously been rescinded and that he had been placed in a top bunk sometime prior to that date. *Response* [#73] at 4.

He states in his May 2, 2022 Response [#73] to Defendant Williams' Motion to Dismiss [#67] that, "on April 25, 2022 the medical department staff declared that [Plaintiff's] bottom bunk restriction will terminate July 2022." *Response* [#73] at 2.  However, this information is not included in the operative complaint, Plaintiff provides no evidentiary support for this statement, and there is no indication before the Court, as of the date of this Recommendation in December 2022, that the bottom bunk restriction was actually rescinded in July 2022 or at any time thereafter.

Thus, Plaintiff fails to demonstrate a recurrent cognizable danger to overcome the prudential mootness doctrine.  Because the only information before the Court is that Plaintiff's bottom bunk restriction has continued since December 18, 2020, the Court finds that Plaintiff presently has the relief he requests and that Plaintiff does not adequately allege an ongoing purported violation of federal law.  Therefore, Plaintiff's request for a permanent bottom bunk restriction is prudentially moot.

Accordingly, the Court **recommends** that the Motion to Dismiss [#67] be **granted in part** to the extent that Plaintiff's Claim Two against Defendant Williams be **dismissed without prejudice.**  *See Brereton v. Bountiful City Corp.* 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing that a court without jurisdiction must dismiss without prejudice because it cannot "make any determination of the merits of the underlying claim").

### b.   Defendant John Doe

Plaintiff proceeds in forma pauperis in this matter.  *Order* [#1-7].  Pursuant to 28 U.S.C. § 1915(e)(2) regarding proceedings in forma pauperis, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (ii) fails to state a claim on

which relief may be granted . . . ."  Thus, although neither Motion [#65, #67] is asserted on behalf of Defendant John Doe in this case, the Court may, pursuant to 28 U.S.C. § 1915(e)(2), sua sponte examine whether Plaintiff has stated a claim against him.

Plaintiff's Claim Two against Defendant John Doe is for deliberate indifference to Plaintiff's need for a bottom bunk restriction in violation of the Eighth Amendment.  *Second Am. Compl.* [#61] at 6.  Plaintiff sues John Doe in his individual capacity for money damages.  *Id.* at 9.  Here, the only allegation about John Doe in the Second Amended Complaint [#61] is that he "took . . . away" Plaintiff's bottom bunk restriction on December 10, 2020, and that the CDOC medical staff refused to tell Plaintiff the name of the provider that rescinded the bottom bunk restriction.  *Id.* at 7.

As previously noted, the subjective component of an Eighth Amendment claim is satisfied when a prison official acts with "deliberate indifference" to a substantial risk of serious harm to an inmate and an inmate's serious medical needs. *Farmer*, 511 U.S. at 828; *Estelle*, 429 U.S. at 104.  Here, Plaintiff has provided no allegations that Defendant John Doe was deliberately indifferent to a substantial risk of serious harm to Plaintiff. There are no allegations as to what information was before Defendant John Doe when he made the decision to rescind the bottom bunk restriction, not to mention a showing that such information would have clearly shown that Plaintiff was at *substantial* risk of serious harm, particularly given that Plaintiff does not allege that he had incurred any injury from his falling out of the top bunk since 2016, four years prior to when Defendant John Doe rescinded the bottom bunk restriction.  In the absence of allegations to show that Defendant John Doe was deliberately indifferent to Plaintiff's need for a bottom bunk

restriction in violation of the Eighth Amendment, the Court cannot find that the subjective prong of a deliberate indifference claim has been met.

Plaintiff's Second Amended Complaint [#61] is the first time that he named Defendant John Doe as a defendant in this lawsuit.  *See Am. Compl.* [#14].  Given that the Second Amended Complaint [#61] is therefore Plaintiff's first attempt at stating a claim against this Defendant, the Court **recommends** that Plaintiff's Claim Two against Defendant John Doe be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 126-27.

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion to Strike [#65] be **DENIED in part**, to the extent asserted under Fed. R. Civ. P. 12(f), and **GRANTED in part**, to the extent asserted under Fed. R. Civ. P. 12(b)(6), that the Motion to Dismiss [#67] be **GRANTED**, and that Plaintiff's Eighth Amendment claims be **DISMISSED**, as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 8, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge